**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| GARY KENDALL | Case No.:  CV 09-00305-EJL-REB |
| Plaintiff, | **REPORT AND RECOMMENDATION RE:** |
| vs. | |
| ACER, INC., et al., | **(1) APPLICATION TO PROCEED IN FORMA PAUPERIS** (Docket No. 1) |
| Defendants | **(2) PETITION FOR PARITY** (Docket No. 5) |

Currently pending before the Court is (1) Plaintiff's Application to Proceed *In Forma Pauperis* (Docket No. 1) and (2) Plaintiff's Petition for Parity (Docket No. 5).  Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Report and Recommendation:

## I.  BACKGROUND

Plaintiff alleges that, in June 2007, he purchased a home computer system (with monitor) and a two-year warranty package.  *See* Compl., ¶ 1 (Docket No. 2).  According to Plaintiff, however, less than two years later, the monitor "flamed and failed."  *See id*. at ¶ 4.  After what appears to be significant effort, Plaintiff was able to contact a representative from Defendant Acer, Inc.[1] to coordinate arrangements to exchange out the defective monitor.  *See id*. at ¶¶ 5-14.

---

[1]  Plaintiff purchased a Gateway computer; still, Plaintiff's Complaint alleges that, following Plaintiff's purchase, "Acer, Inc. purchased Gateway Computers, including all Gateway product contractual warranty and service responsibilities."  *See* Compl., ¶ 3 (Docket No. 2).

**REPORT AND RECOMMENDATION - 1**

Ultimately, on April 29, 2009, Defendants delivered to Plaintiff an allegedly inferior replacement monitor.  *See id*. at ¶ 15 ("Acer America has attempted to substitute a lesser quality monitor for the failed under warranty . . . monitor.").  Through this action, Plaintiff brings claims for breach of warranty, breach of contract, and theft, arguing:

> This action is now solely about gaining a Court order to Acer to FULFILL their contractual responsibilities and to return the monitor in like-new working condition or replace the monitor as is negotiated with and agreeable to Petitioner, and to Acer to make compensation to Petitioner for their breaches of contract and law.

*See id*. at ¶ 9(c) (capitals in original).

On September 9, 2009, this Court ordered the reassignment of this action, concluding that, while Plaintiff is entitled to *in forma pauperis* status, his Complaint would nonetheless be subject to dismissal for failure to state a claim for relief.  *See* Order of Reassign. (Docket No. 6) ("Because granting [Plaintiff's] Petition to Proceed *In Forma Pauperis* would trigger an automatic review under 28 U.S.C. § 1915, and such a review would result in dismissal of this lawsuit, the undersigned may not proceed further with this action.").[2]  This matter was therefore reassigned to United States District Judge Edward J. Lodge who, in turn, ordered that all pre-trial matters be referred back to the undersigned to conduct all necessary and proper proceedings pertaining thereto.  *See* 9/9/09 Order (Docket No. 7).

## REPORT

The Court reiterates that Plaintiff qualifies for *in forma pauperis* status.  *See* Order of Reassign. (Docket No. 6).  Plaintiff reports his monthly income at $981.00, with commensurate

---

[2] As a United States Magistrate Judge, the undersigned does not have jurisdiction to dismiss a lawsuit without the parties' consent.  *See* 28 U.S.C. §§ 636(b) & (c).  Here, there is no such consent.

**REPORT AND RECOMMENDATION - 2**

monthly expenditures for rent, food, laundry, communications, vehicle, and other expenses in the

amount of $981.00.  *See* Pet., pp. 2-4 (Docket No. 1).  Further, although Plaintiff lists as an asset

a 1992 Dodge pick-up with an estimated value of $500.00, his debts amount to $5,799.08.  *See*

*id*. at pp. 3-5.  As required by 28 U.S.C. § 1915(a)(1), Plaintiff has attested that he is unable to

pay costs or to give security in order to pursue this action.  *See id*. at p. 2.  For these reasons,

Plaintiff is granted leave to proceed *in forma pauperis*.

**A.     Legal Standards**

The Court is required to screen complaints brought by litigants who have been granted

leave to proceed *in forma pauperis*.  *See* 28 U.S.C. § 1915(e)(2).  The Court must dismiss the

Complaint entirely or in part if it: (1) is frivolous or malicious; (2) fails to state a claim upon

which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from

such relief.  *See id*. at § 1915(e)(2)(B)(I-iii).

Generally, the Court liberally construes pro se pleadings and gives pro se plaintiffs the

benefit of any doubt during initial review.  *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir.

2000).  Additionally, if amending the Complaint would remedy the deficiencies, plaintiffs should

be notified and provided an opportunity to amend.  *See Jackson v. Carey*, 353 F.3d 750, 758 (9th

Cir. 2003).  However, "in determining whether a complaint is frivolous, a court is *not* bound, as

it usually is when making a determination based solely on the pleadings, to accept without

question the truth of the plaintiff's allegations."  *See Denton v. Hernandez*, 504 U.S. 25, 32

(1992) (emphasis in original).  The Court may find a complaint factually frivolous "when the

facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are

judicially noticeable facts available to contradict them."  *See id*.; *see also O'Loughlin v. Doe*,

**REPORT AND RECOMMENDATION - 3**

920 F.2d 614, 617 (9th Cir. 1990) (holding a complaint submitted *in forma pauperis* "is frivolous

if it has no arguable basis in fact or law").

**B.      Subject Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction" and possess only the power to

adjudicate cases that the Constitution and federal statutes permit.  *Kokkonen v. Guardian Life*

*Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "A federal court is presumed to lack jurisdiction in a

particular case unless the contrary affirmatively appears."  *Stock West, Inc. v. Confederated*

*Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citing *California ex rel.*

*Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979)).

Here, Plaintiff asserts multiple bases for invoking this Court's jurisdiction: (1) "original

jurisdiction, pursuant to 28 U.S.C. § 1331 federal question;" (2) "jurisdiction due to diversity of

citizenship, pursuant to 28 U.S.C. § 1332;" (3) "jurisdiction due to commerce and anti-trust,

pursuant to 28 U.S.C. § 1337;" (4) "jurisdiction due to corporation organized under federal law

pursuant to 28 U.S.C. § 1349;" and (5) "jurisdiction pursuant to 15 U.S.C. § 2301 *et seq*. and

§ 2310."  *See* Compl., p. 2, ¶¶ 1-5 (Docket No. 2).  Each basis is examined below to determine

whether this Court has the requisite jurisdiction to entertain Plaintiff's claims.

1.      Federal Question

Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all

civil actions arising under the Constitution, laws, or treaties of the United States."  *See* 28 U.S.C.

§ 1331.  Aside from citing to 28 U.S.C. § 1331 and stating summarily "federal question" in his

Complaint, Plaintiff fails to identify how his breach of warranty, breach of contract, and/or theft

claims "arise[ ] under the Constitution, law, or treaties of the United States" as is required.  *See*

**REPORT AND RECOMMENDATION - 4**

*id.* Regardless, Plaintiff's breach of warranty claim, and related citations to 15 U.S.C. § 2301 *et seq.*, appears to call upon the Magnuson-Moss Warranty Act ("MMWA") - a federal statute - as a basis for relief. Thus, to the extent Plaintiff's breach of warranty claim raises a federal question via the MMWA, the MMWA's jurisdictional prerequisites will be examined and tested against Plaintiff's allegations (*see infra* at pp. 8-10); otherwise ,there is no subject matter jurisdiction premised upon federal question here. The matter should be dismissed without prejudice.

2.      Diversity of Citizenship; Amount in Controversy

28 U.S.C. § 1332 provides the basis for federal diversity jurisdiction, stating:

> The district courts shall have original jurisdiction of all civil actions
> where the matter in controversy exceeds the sum or value of $75,000,
> exclusive of interest and costs, and is between citizens of different
> States; citizens of a State and citizens or subjects of a foreign state.

*See* 28 U.S.C. § 1332. The party seeking to invoke federal jurisdiction has the burden of proving diversity jurisdiction. *See Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). Without addressing the parties' respective citizenship, it appears that, regardless, Plaintiff does not meet the amount in controversy requirement.

In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938), the Supreme Court held that a plaintiff who files a complaint in federal court demanding a sum in excess of the required amount in controversy is entitled to remain in federal court where the amount is pled in "good faith," which the Court clarified to mean that "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *See id.* at 288-89.

Applying this standard, it is clear in this Court's mind that, if Plaintiff prevails on liability, any award will be below the $75,000 jurisdictional amount. Indeed, Plaintiff concedes

**REPORT AND RECOMMENDATION - 5**

that the alleged difference (in monetary terms) between the original, purchased monitor and the later, substituted monitor is a mere $60.00.  *See* Compl., ¶ 15 (Docket No. 2) ("Acer delivered a HD2201 monitor which has no built-in USB hub and which retails for $199.99 while the original LP2207 monitor had built-in USB hub and retailed for $259.99.").  Plaintiff's additional request of approximately $420,000 in "damages," however, is immaterial toward establishing the necessary amount in controversy.

While it is true that "the sum claimed by the plaintiff controls" for purposes of determining jurisdiction, again, this is only "if the claim is apparently made in good faith."  *See St. Paul Mercury*, 303 U.S. at 288.  From the facts pled, the actual economic damages flowing from Plaintiff's allegations may possibly amount to more than the $60.00 difference between the old monitor and its replacement; for example, the sum of Plaintiff's damages may include more than the total value of the failed monitor.  But even when giving this benefit of the doubt to Plaintiff, and adding any communication expenses, shipping expenses, and his loss of computer use for months, his actual loss and other consequential and incidental damages together do not total up to $75,000 to a legal certainty.  Instead, the monetary damages claimed within Plaintiff's Complaint (ranging from $10,000 to $50,000 and totaling $420,000 (*see* Coml. at pp. 8-10)) appear to be arbitrary and unrelated to a commonsensical reading of the alleged misconduct.[3]

---

[3] Plaintiff did not specifically plead his damages as punitive or as another category of damages.  But even with the liberal inference that Plaintiff intended the $420,000 in pled damages to be partly punitive, such damages are not applicable to the amount in controversy requirement.  Under Idaho law, punitive damages are not recoverable for breach of warranty claims "absent a showing of fraud, malice oppression or other sufficient reason for doing so."  *See Jensen v. Seigel Mobile Homes Group*, 668 P.2d 65 (Idaho 1983).  Here, there are no pled facts indicating fraud, malice, or oppression.  In short, to the extent Plaintiff seeks punitive damages in connection with his breach of warranty action, these damages do not apply to meet the amount-in controversy requirement.

**REPORT AND RECOMMENDATION - 6**

Because the $75,000 amount in controversy needed to support diversity jurisdiction

cannot be met, as a legal certainty, this Court has no jurisdiction and should dismiss without

prejudice.

3.      Commerce and Antitrust Regulations

28 U.S.C. § 1337 provides the basis for federal jurisdiction within antitrust contexts,

stating in pertinent part:

> The district courts shall have original jurisdiction of any civil action
> or proceeding arising under any Act of Congress regulating
> commerce or protecting trade and commerce against restraints and
> monopolies . . . .

*See* 28 U.S.C. § 1337.[4]  Plaintiff's Complaint fails to refer to the necessary "Act of Congress

regulating commerce or protecting trade and commerce against restraints and monopolies" when

asserting this particular jurisdictional basis, nor is this Court aware of any premised upon the

record now before the Court.  Simply put, the Complaint fails to offer any basis for this Court's

jurisdiction under 28 U.S.C. § 1337 and, as a result, this action should be dismissed without

prejudice.

4.      Corporation Organized Under Federal Law

It is difficult to understand exactly what Plaintiff intends to mean by stating "[t]his Court

holds . . . Jurisdiction due to Corporation organized under federal law pursuant to 28 U.S.C.

---

[4]  28 U.S.C. § 1337 goes on to state:

> *Provided, however*, That the district courts shall have original
> jurisdiction of an action brought under section 11706 or 14706 of title
> 49, only if the matter in controversy for each receipt or bill of lading
> exceeds $10,000, exceeds $10,000, exclusive of interest and costs.

*See* 28 U.S.C. § 1337 (italics in original).  Notwithstanding the already-discussed amount in
controversy issues, Plaintiff's Complaint offers no insight into the statutory authority for
pursuing a possible antitrust claim.

**REPORT AND RECOMMENDATION - 7**

§ 1349 . . . ."  *See* Compl, p. 2, ¶ 4 (Docket No. 2).  In fact, a reading of the statue offered as a

basis for this Court's jurisdiction seems to stand for the opposite proposition:

> The district courts shall not have jurisdiction of any civil action by or
> against any corporation upon the ground that it was incorporated by
> or under an Act of Congress, unless the United States is the owner of
> more than one-half of its capital stock.

*See* 28 U.S.C. § 1349.  Here, there is no allegation whatsoever that the United States is the owner

of more than half of any of Defendants' capital stock.  As a consequence, 28 U.S.C. § 1349

cannot confer jurisdiction on this Court and this action should be dismissed without prejudice.

     5.     The Magnuson-Moss Warranty Act

The MMWA applies to all sales of consumer products in which a written warranty is

given.  Section 2310(d)(1) of the Act provides that "a consumer who is damaged by the failure of

a supplier, warrantor, or service contractor to comply with any obligation under [the MMWA],

or under a written warranty, implied warranty, or service contract, may bring suit for damages

and other legal and equitable relief . . . ." *See* 15 U.S.C. § 2310(d)(1).  Federal and state courts

have concurrent jurisdiction over MMWA actions (*see id*. at §§ 2310(d)(1)(A) & (B)), but no

claim is cognizable by a federal court:

> (A)     if the amount in controversy of any individual claim is less
> than the sum or value of $25;
>
> (B)     if the amount in controversy is less than the sum or value of
> $50,000 (exclusive of interests and costs) computed on the
> basis of all claims to be determined in this suit; or
>
> (C)     if the action is brought as a class action, and the number of
> named plaintiffs is less than one hundred.

*See id*. at §§ 2310(d)(3)(A-C).  The provisions of 15 U.S.C. § 2310(d)(3) are written in the

disjunctive; therefore, all three subsections must be satisfied for a federal claim to exist.  Thus,

**REPORT AND RECOMMENDATION - 8**

like the amount in controversy requirement accompanying diversity jurisdiction (*see supra* at pp.

5-7), the MMWA carries with it a similar amount in controversy requirement - \$50,000.[5]

Again, the Court will look no further than the requested relief in the pleadings to

determine whether the amount in controversy is met unless, "from the face of the pleadings, it is

apparent, to a legal certainty, that [Plaintiff] cannot recover the amount claimed." *See St. Paul*

*Mercury*, 303 U.S. at 289; *see also Kelly v. Fleetwood Enterprises, Inc.*, 377 F.3d 1034 (9th Cir.

2004) (applying "legal certainty test" to MMWA claims).  When doing so, Plaintiff's Complaint

fails to suggest that his MMWA-related claims amount to \$50,000 or more, particularly when

reminded of the alleged \$60.00 difference in monetary value between the two monitors at issue.

*See supra* at pp. 5-6.[6]  Under these circumstances, even when assuming the viability of Plaintiff's

---

[5] The key to resolving any ambiguity arising from the jurisdictional language used in the MMWA is found in the MMWA's clear purpose and scheme of *limited* federal jurisdiction.  That is, the MMWA allows all otherwise-qualifying MMWA actions to be brought in state court, but only a subset of such actions is allowed in federal court, as permitted by 15 U.S.C. § 2310(d)(3). This subset essentially limits federal MMWA actions to those involving either a single MMWA claim with at least \$50,000 in controversy or a joinder of MMWA claims (or class action) aggregating damages of at least \$50,000 - so long as each individual claim is not less than \$25.00.  In other words, federal jurisdiction exists if each individaul claim is for at least \$25; the total claims in the suit are for at least \$50,000; and there are at least 100 named plaintiffs in any class action.  *See* H.R.Rep. No. 93-1107 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7702, 7724 ("Under the monetary and other limitation included in subsection (d), no action could be brought in a United States district court unless the overall matter in controversy exceeded \$50,000 exclusive of interests and costs, and no individual claim could be aggregated in any such action by joinder or in a class action unless it exceeded \$25.00.  In addition to these requirements, if the action is to be brought as a class action, there must be at least 100 named plaintiffs.").

[6] Additionally, allowing punitive damages (if Plaintiff's additional claim for damages can be construed as such) to be tacked on to alleged economic damages that are below the amount in controversy "would permit litigants to circumvent the \$50,000 threshold requirement of § 2310(d)(3)(B) simply by arbitrarily tacking a substantial sum of punitive damages onto a minimal compensatory damages claim."  *See Kelly*, 377 F.3d at 1039-40 ("Because our role is to adjudicate, not legislate, we decline [the appellants'] invitation to write a punitive damages provision into the [MMA].").

**REPORT AND RECOMMENDATION - 9**

underlying claims, this Court does not have jurisdiction and the action should be dismissed

without prejudice.[7]

### RECOMMENDATION

Based upon the FOREGOING, it is HEREBY RECOMMENDED that Plaintiff's

Complaint (Docket No. 2) be DISMISSED without prejudice.  Because this Court lacks

jurisdiction, it is FURTHER RECOMMENDED that Plaintiff's Petition for Parity (Docket No.

5) be DENIED as MOOT.



DATED:  **February 8, 2010**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

---

[7]  The significant degree to which Congress intended to restrict federal MMWA jurisdiction is well-illustrated by comparing the $50,000 MMWA requirement with the $10,000 amount in controversy required for diversity jurisdiction when the MMWA was enacted in 1974. *See Donahue v. Bill Page Toyota, Inc.*, 164 F. Supp. 2d 778, 782, n. 11 (E.D. Va. 2001) (citing Judicial Improvements and Access to Justice Act § 201(a), Pub.L. No. 100-702, 102 Stat. 4642 (1988) (increasing the required amount in controversy for diversity jurisdiction to $50,000 from 10,000)).

**REPORT AND RECOMMENDATION - 10**